Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                              1:20-cv-04580

| | |
|---|---|
| Yulia Lugo, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Complaint |
| Celestial Seasonings, Inc., | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Celestial Seasonings, Inc. ("defendant") manufactures, distributes, markets, labels and sells herbal tea bags labeled as "Honey Vanilla Chamomile Herbal Tea" ("Product").

2.     The Product is available to consumers from retail and online stores of third-parties and is sold boxes of 20 tea bags (1.1 OZ).

3.     The relevant front label representations include "Herbal Tea," "Honey Vanilla Chamomile" and a picture of a honey dipper.



4.    Though the Product is an herbal blend tea, it has two characterizing or main flavors – honey and vanilla.

5.    The representations are misleading because the Product contains trace or a *de minimis* amount of honey and vanilla and the front label does not disclose this to consumers.

6.    Consumer preference is for foods which get their taste from characterizing food ingredients, i.e., honey flavor from honey and vanilla flavor from vanilla beans.

I.    Product Contains Minimal Real Vanilla

7.    Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.

8.    Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[1]

9.    Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[2]

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.

10.    Label Insight determined that 76% of consumers avoid products with artificial flavors.[3]

11.    Consumers want vanilla taste in vanilla flavored products to come from a real source, *i.e.*, from vanilla from vanilla beans.

12.    Flavoring ingredients, especially for products labeled as vanilla, are typically the most expensive ingredient in a food, and vanilla has reached record high prices in recent years.[4]

13.    Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[5]

14.    According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

15.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[6]

16.    Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[7]

17.    In early 2018, in response to rampant misleading labeling of vanilla products, the Flavor and Extract Manufacturers Association of the United States ("FEMA"), representing the flavor industry, urged companies to truthfully label vanilla foods so consumers are not misled. *See*

---

[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

[4] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.

[5] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

[6] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").

[7] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

John B. Hallagan and Joanna Drake, FEMA, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake").[8]

18.    FEMA's analysis noted that the use of fake vanilla has been a scourge since this flavoring was first discovered.

19.    In the 1960s, standards for vanilla products were established to end practices which "deprive the consumer of value the product is represented to have, and for which the consumer pays," such as "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure.'"[9]

20.    The vanilla standards include exclusively vanilla ingredients like vanilla extract and combinations of vanilla extract and the primary flavoring substance in vanilla beans, vanillin.

21.    The purpose of the vanilla regulations was to "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans."[10]

22.    According to FEMA, the general flavor regulations do not apply to foods characterized and labeled as "vanilla:"

> It is important to emphasize that these [at 21 CFR Sections 101.22(i)(1), (2) and (3)] regulations apply only to foods that are not subject to a federal standard of identity.
>
> …
>
> These regulations, found at 21 CFR Section 101.22, apply to all foods except for those subject to a federal standard of identity and this has often resulted in some confusion with the standards governing vanilla flavorings…that have their own requirements for proper labeling as required in FFDCA Section 403.

---

[8] Hallagan and Drake, "There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations."
[9] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960.
[10] *Id.*.

23.    Unfortunately for consumers, the Product's "vanilla" and "honey" representations are false and misleading because instead of listing honey and vanilla extract, it contains "Natural Honey Flavor with Other Natural Flavors."

**INGREDIENTS:** CHAMOMILE, ORANGE PEEL, NATURAL HONEY FLAVOR WITH OTHER NATURAL FLAVORS, LICORICE, ROASTED CHICORY AND LEMONGRASS.

**INGREDIENTS:** Chamomile, Orange Peel, Natural Honey Flavor with Other Natural Flavors, Licorice, Roasted Chicory, and Lemon Grass.

24.    Listing "Natural Honey Flavor with Other Natural Flavors" means the honey and vanilla taste are not derived exclusively or even predominantly from honey and vanilla sources, because if they were, the ingredient list would indicate separately honey and vanilla extract.

25.    Though "honey flavor" may contain actual honey, it will only contain isolated compounds of honey as opposed to the ingredient honey which contains all of the properties and taste of honey.

26.    Though "other natural flavors" may provide some vanilla taste, it contains a minute amount of real vanilla and isolated vanilla compounds – artificial vanilla not from vanilla beans.

27.    Consumers will not feel they need to turn over the box to double check the ingredient list because the lack of any qualifying terms, i.e., "flavored," or "natural flavors," on the front label gives them the impression that the flavor is only from the characterizing ingredients, honey and vanilla.

28.    The unqualified "honey" and "vanilla" representations on the Product caused consumers, like Plaintiff, to believe that the Product's honey and vanilla taste comes predominantly, if not exclusively, from honey and vanilla.

29.    Defendant knows consumers will pay more for the Product because the front label

only states "honey" and "vanilla."

30.    Defendant's omission and failure to disclose the absence of real honey and vanilla on the front label is deceptive and misleading to consumers.

31.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

32.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

33.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

34.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

35.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $2.79 per 1.1 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

36.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

37.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

38.    Plaintiff Yulia Lugo is a citizen of New York.

39.    Defendant Celestial Seasonings, Inc., is a Delaware corporation with a principal

place of business in Boulder, Boulder County, Colorado and is a citizen of Colorado.

40.    "Minimal diversity" exists because plaintiff Yulia Lugo and defendant are citizens

of different states.

41.    Upon information and belief, sales of the Product in New York exceed $5 million

per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5

million per year.

42.    Venue is proper in this judicial district because a substantial part of the events or

omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase

the Product and the misleading representations and/or their recognition as such.

43.    This court has personal jurisdiction over defendant because it conducts and transacts

business, contracts to supply and supplies goods within New York.

Parties

44.    Plaintiff Yulia Lugo is a citizen of New York, Staten Island, Richmond County,

45.    Defendant Celestial Seasonings, Inc. is a Delaware corporation with a principal place

of business in Boulder, Colorado, Boulder County and is a citizen of Colorado.

46.    During the relevant statutes of limitations, plaintiff purchased the Product within her

district and/or State for personal and household consumption and/or use in reliance on the

representations of the Product.

47.    Plaintiff Yulia Lugo purchased the Product on one or more occasions and at one or

more locations, during the relevant period, at stores near her residence during August 2020,

including stores located at or around the Staten Island Mall.

48.    Plaintiff bought the Product at or exceeding the above-referenced price because she

liked the product for its intended use and relied upon the front label claims to expect its taste only

came from the identified front label ingredients of honey and vanilla.

49.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

50.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

51.    The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

52.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

### Class Allegations

53.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

54.    Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

55.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

56.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

57.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

58.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

59.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

60.    Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

61.    Plaintiff seeks class-wide injunctive relief because the practices continue.

### New York General Business Law ("GBL") §§ 349 & 350
### (Consumer Protection Statute)

62.    Plaintiff incorporates by reference all preceding paragraphs.

63.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

64.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

65.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

66.    The amount and proportion of the characterizing components, honey and vanilla, have a material bearing on price and consumer acceptance of the Product.

67.    The front label gives the impression the Product has more honey and vanilla than it does.

68.    Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

69.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

70.    Plaintiff incorporates by reference all preceding paragraphs.

71.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

72.    The amount and proportion of the characterizing components, honey and vanilla, has a material bearing on price and consumer acceptance of the Product.

73.    The front label gives the impression the Product has more of the characterizing ingredients than it does.

74.    Defendant had a duty to disclose the lesser amounts of the characterizing ingredients and provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

75.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

76.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

77.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

78.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

79.    Plaintiff incorporates by reference all preceding paragraphs.

80.    The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

81.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

82.    The amount and proportion of the characterizing components have a material bearing on price and consumer acceptance of the Product

83.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

84.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

85.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

86.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

87.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

88.    Plaintiff incorporates by reference all preceding paragraphs.

89.    Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

90.    The amount and proportion of the characterizing components have a material bearing on price and consumer acceptance of the Product.

91.    The front label gives the impression the Product has more of the characterizing components than it does.

92.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

93.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

94.    Plaintiff incorporates by reference all preceding paragraphs.

95.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:    September 26, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-04580
United States District Court
Eastern District of New York

Yulia Lugo, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Celestial Seasonings, Inc.,

Defendant

Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 26, 2020

/s/ Spencer Sheehan
Spencer Sheehan